## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARENCE D. SCHREANE, | : | CIVIL ACTION NO. 3:CV-11-0613 |
| | : | |
| **Plaintiff** | : | **(Judge Caputo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Blewitt)** |
| | : | |
| RONNIE HOLT, WARDEN, et al., | : | |
| | : | |
| **Defendants** | : | |

## <u>REPORT AND RECOMMENDATION</u>

### I. Procedural Background

On April 1, 2011, Plaintiff Clarence Schreane, formerly an inmate at the United States

Penitentiary at Canaan (USP-Canaan), Waymart, Pennsylvania, located in the Middle District of

Pennsylvania, filed, *pro se,* this civil rights action, stating that it was brought, in part, pursuant to

*Bivens,* under 28 U.S.C. §1331.[1]  (Doc. 1, p.1).   On April 25, 2011, Plaintiff filed an Amended

Complaint in this action. (Doc. 4).   Plaintiff's Amended Complaint is a lengthy 18-page, 37-

paragraph hand-written pleading.  Plaintiff also submitted voluminous documents as exhibits with

---

[1]  *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).  Plaintiff's action falls within 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or treaties of the United States." (Emphasis added).

As Plaintiff correctly indicates, this is a *Bivens* action since he seeks monetary damages from federal officials for alleged violations of his constitutional rights. *See Oriakhi v. Wood*, 2006 WL 859543, * 1, n. 1 (M.D. Pa.); *Conway v. Lindsay*, 2009 WL 1956282 (M.D. Pa.). (Doc. 4, p. 1).

Plaintiff's action is not a §1983 civil rights action since he does not claim that any state official violated his constitutional rights.  *See  Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.).

Plaintiff is currently an inmate at the Federal Correctional Complex - Coleman Low (FCC-Coleman) Coleman, Florida, Middle District of Florida, inmate number 17956-074.

his original Complaint.   On April 7, 2011, Plaintiff was directed to pay the filing fee or file an application to proceed *in forma pauperis* within 30 days of the order and an authorization form within thirty (30) days or the case would be dismissed. (Doc. 3).   On May 5, 2011, Plaintiff filed a Motion for Leave to Proceed *In Forma Pauperis* and provided authorization for the prison to submit a copy of Plaintiff's trust fund account to the Court, and for the entire filing fee to be deducted from his inmate account. (Docs. 5 and 6, respectively).   An Administrative Order was sent to the Prison Superintendent/ Warden on May 5, 2011. (Doc. 7).   On June 7, 2011, Plaintiff filed a 12-page "Affidavit of Truth and Facts."  (Doc. 8).

On June 13, 2011, we issued our Report and Recommendation that the Plaintiff's claims for a specific amount of monetary damages against Defendants be stricken and that Plaintiff's claims for damages against the seven (7) individual federal Defendants be dismissed, with the Plaintiff's Fifth Amendment due process violations against Defendants Holt, Seana, Swartzfager, Edward, Renda and Alonga dismissed as Heck-barred and the Plaintiff's First  Amendment claim against Defendants Donahue, Seana and Swartzfager dismissed as well.   (Doc. 9).   Ultimately, we recommended that Plaintiff's Amended Complaint filed on April 25, 2011, be dismissed in its entirety against all Defendants, and that because Plaintiff has already filed one Amended Complaint, that he not be granted leave to file a second Amended Complaint based on futility. Lastly, we recommended that Plaintiff's IFP Motion be granted solely for the purpose of filing this action.  (Doc. 9).

On November 15, 2011, the Court issued a Memorandum and Order, adopting in part and rejecting in part our Report and Recommendation as follows:

Plaintiff's 1983, Due Process,  First Amendment, and Eighth Amendment claims are dismissed with prejudice.  Plaintiff's Equal Protection claim is dismissed without prejudice.  The Court gives the Plaintiff twenty-one (21) days from the date of the order to file an amended complaint, with failure to do as such resulting in dismissal of the case.

(Doc. 18).

On December 20, 2011, because the due date for Plaintiff's second Amended Complaint had passed, we issued a second Report and Recommendation regarding Plaintiff's claims, in which we recommended that the action be dismissed without prejudice on the basis that Plaintiff failed to file a second Amended Complaint in compliance  with the Court's November 15, 2011 Order. We reasoned that because the Plaintiff did not file a second Amended Complaint, he failed to prosecute his action, which would warrant a dismissal under Federal Rule of Civil Procedure 41(a). (Doc. 20).

On January 5, 2012, Plaintiff filed his second Amended Complaint. (Doc. 21).  On March 21, 2012, the Court issued an Order, in which the Court: (1) rejected our Report and Recommendation; (2) denied the Plaintiff's motions to appoint counsel; (3) denied Plaintiff's motion to amend his complaint as moot, and (4) recommitted the case to us for further proceedings.  (Doc. 24).

On March 29, 2012, Plaintiff filed a response to the Court's March 21, 2012 Order.  (Doc. 26).  In this response, Plaintiff avers that the "relevant evidence to the credibility of the case rests in light of the surveillance video", and that allegedly not allowing him to review the video is a violation of his due process and equal protection rights.  (Doc. 26, p. 3-4). He also avers that the DHO's decision was based purely on the prison's staff accounts of the incident in question.  (Doc.

26, 5).  Plaintiff requests that the Court order the production of the surveillance video tape in the interests of fairness, due process, and equal protection.  (Doc. 26, p. 6).

On April 4, 2012, Plaintiff filed an "Affidavit", in which he avers that he requested from several Defendants that the surveillance video tape be furnished to him for his review.  (Doc. 27, p. 2).  He again alleges that he was denied access to the video surveillance, and claims this denial was in violation of his due process and equal protection rights.  (*Id*.).  He refers to an abundance of case law that held that in the interest of due process, prisoners must be shown a videotape used as evidence against him.  (Doc. 27, p. 3-6).  He also avers that the DHO refused to call witness(es) Plaintiff requested to be called, and that this also was a violation of his procedural due process rights.  (Doc. 27, p. 6).  Lastly, he states that he "has no other "options" but to order the courts to order, compel the defendants to produce the productions of surveillance video tape."  (*Id*.).

This Court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331 and § 1346.

**II. Allegations of Second Amended Complaint (Doc. 21)**.

In his twenty-two page, hand-written second Amended Complaint (as well as in his original Complaint and first Amended Complaint), Plaintiff named the following seven (7) Defendants : USP - Canaan Warden Ronnie Holt; USP - Canaan Disciplinary Hearing Officer ("DHO") Renda; USP - Canaan Correctional Officer J. Seana; USP - Canaan Correctional Officer K. Swartzfager; USP - Canann Special Housing Unit Property Officer J. Alonga; USP - Canaan Correctional Officer Donahue; and USP - Canaan Lieutenant Edward. (Doc. 21, p. 1).  Plaintiff has filed his second Amended Complaint against all seven (7) Defendants in their individual capacities.  (*Id*.).  All Defendants are employees of the U.S. Bureau of Prisons ("BOP").  The allegations set forth in

Plaintiff's second Amended Complaint are virtually identical to the allegations set forth in his original and first Amended Complaints.  Plaintiff alleges that his First, Fifth, and Eighth Amendment Constitutional rights were violated.  (Doc. 21).

First, Plaintiff alleges that several Defendants violated his Fifth Amendment Procedural Due Process rights.  Plaintiff alleges that Defendant Lieutenant Edward violated his due process rights by allegedly refusing to allow the Plaintiff to view the surveillance tapes of the initial Code 205 violation on May 10, 2010 both prior to and at his disciplinary hearing.  (Doc. 21, p. 6-8).  Plaintiff further avers that on July 18, 2010, Defendant Correctional Officer K. Swartzfager violated his Fifth Amendment due process rights claiming that Swartfager made false allegations against him and filed a false incident report charging him with a second violation of BOP Code 205, engaging in a sexual act.  (Doc. 21, p. 9).  Plaintiff contends that this incident report was fabricated in retaliation to Plaintiff's surveillance videotape request regarding his first Code 205 incident. (Doc. 21, p. 5). Plaintiff avers that the evidence was not sufficient to support his disciplinary conviction on the incident report Defendant Swartzfager issued against him. In relation to this second incident report, Plaintiff alleges that Defendant Lt. Edwards again failed to advise him of his procedural due process rights with respect to his disciplinary hearing on the July 2010 charge, and that Defendant Edwards failed to review the videotape of the incident as he requested.  (Doc. 21, p. 9).

Plaintiff also avers that Defendant Disciplinary Hearing Officer Renda violated his procedural due process rights because Plaintiff was allegedly not allowed to call witnesses or have the surveillance videotape at his disciplinary hearing, despite the fact that he allegedly informed Renda that he wanted to call witnesses and view the surveillance tape.  (Doc. 21, p. 14-19).  Plaintiff avers

that his requests were denied by Defendant Renda, that the disciplinary hearing proceeded without any of the Plaintiff's witnesses or any surveillance videotape of the incident, and that his requests for a polygraph test and fingerprint analysis were denied, thus violating his due process rights.  (*Id*.).  Plaintiff avers that Defendant Renda found him guilty of the charges without any supporting evidence other than the correctional officers' misconduct reports.  (*Id*.).

Plaintiff concludes that he would not have been convicted of the July 2010 Code 205 misconduct charge if his procedural due process rights were afforded him.  (Doc. 21, p. 12-14).  Plaintiff further avers that Defendant Warden Holt should have known that his due process rights were violated when Holt reviewed the disciplinary report after his conviction and when Holt failed to review the videotape, seemingly as part of Plaintiff's appeal of his conviction.  (*Id*.).

 Furthermore, Plaintiff claims  that his due process rights were again violated when he requested videotape surveillance to challenge a charge that he was in possession of an illegal object inside an ink pen.  (Doc. 21, p. 10-11).  Plaintiff alleges that on July 23, 2010, SHU Property Officer, Defendant Alonga "plainted" (sic) the object that was inside the ink pen while going through his personal property.  (*Id*.).  Plaintiff then avers he requested that the surveillance videotape be carefully reviewed to see who had planted the illegal instrument in his personal property and, he requested that a fingerprint analysis be conducted.  (*Id*.).  Plaintiff states that his requests were subsequently denied and, as a result, he was kept in the SHU in violation of his due process rights.  (*Id*.).  Plaintiff also avers that Defendant Alonga, by planting fabricated evidence, caused his good time credits to be taken as a result of his disciplinary conviction on the charge.

Finally, in terms of procedural due process claims, Plaintiff contends that his due process rights were further violated by Defendant Ronnie Holt because he allegedly refused to review the surveillance videotape of the incident involving the lost prayer oils and of the incident in which the illegal object was found in his personal property. (*Id*.).  Plaintiff contends that he directed several correspondences to Defendant Holt requesting the return of his lost oils.  Also, while Defendant Holt was on scheduled rounds (on an unspecified date) in the SHU, Plaintiff requested that his prayer oils be returned and that the surveillance videotapes be carefully reviewed.  Plaintiff avers that in response to his requests, Defendant Holt said that "he is not going to review no surveillance and that, what ever the (DHO) decided that's the decision he was going to sustain." (Doc. 21, p. 8).  Plaintiff asserts the denial of his stated requests violated his due process rights.

Secondly, Plaintiff alleges that several Defendants violated his First Amendment Freedom to Exercise Religion right.  Plaintiff alleges that Defendants Seana and Swartzfager violated his First Amendment right to freely exercise religion by writing alleged false incident reports charging  him with a violations of BOP Prohibited Act 205 (engaging in a sexual act in front of the unit correctional officer) in retaliation of Plaintiff practicing his religion.  (Doc. 21, p. 6). Plaintiff states that as a result of being "wrongly convicted" of violating Code 205, he was removed to the Special Housing Unit ("SHU") and received loss of good-conduct time.  (*Id*.).          Additionally, Plaintiff claims that Defendant Corrections Officer Donahue violated his First Amendment right of freedom of religion. The Plaintiff avers that on July 18, 2010, he was escorted by Correctional Officers to the SHU in response to the second disciplinary report filed against him by Defendant Swartzfager for violation of Code 205.  (Doc. 21, p.12).  Plaintiff claims that while he was being taken to and housed in the

SHU, Defendant Correction Officer Donahue, who was head of Plaintiff's housing unit, failed to secure his personal property and, as a result, his property was stolen.  (*Id.*).   Plaintiff states that the items missing were eight (8), eight ounce (8 oz.) bottles of religious oils.  (*Id.*).   Plaintiff avers that because of Defendant Donahue's negligence in failing to secure his religious oils, his First Amendment right to practice his religion was violated.  (*Id.*).

Thirdly, Plaintiff claims generally that his Eighth Amendment protection from cruel and unusual punishment was violated because he was removed to the Special Housing Unit and lost good-conduct time due to his alleged wrongful convictions.  (Doc. 21).

Lastly, Plaintiff claims generally that his Fifth Amendment equal protection rights were violated by all Defendants based on his African American race.  He claims that the Code 205 misconduct reports, convictions and sentences were a result of the Defendants' racial discrimination.  (Doc. 21).

We shall now screen Plaintiff's second Amended Complaint (Doc. 21) as we are obliged to do under the PLRA.

### III.  PLRA Standard.

The Prison Litigation Reform Act of 1995,[2] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  Specifically, § 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the

---

[2]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to state a
> claim on which relief may be granted; or (iii)
> seeks monetary relief against a defendant who
> is immune from such relief.

## IV. Motion to Dismiss Standard.

The Court in *Williams v. Hull,* 2009 WL 1586832, *2-*3 (W.D. Pa. 2009), set forth the

Motion to Dismiss standard of review, as annunciated by the Supreme Court in *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. –, 127 S. Ct. 1955 (2007), and as refined in *Ashcroft v. Iqbal*, 129 S. Ct. 1937

(2009), as follows:

> The issue is not whether the plaintiff will prevail at the end but
> only whether he should be entitled to offer evidence to support
> his claim. *Neitzke; Scheuer v. Rhodes*, 419 U.S. 232 (1974). A
> complaint must be dismissed pursuant to Rule 12(b)(6) if it does
> not allege "enough facts to state a claim to relief that is plausible
> on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570,
> 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (rejecting the traditional
> 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 78
> S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also *Ashcroft v. Iqbal*, --- U.S.
> ----, ----, 129 S.Ct. 1937, ----, --- L.Ed.2d ----, ----, 2009 WL
> 1361536 (May 18, 2009) (specifically applying *Twombly* analysis
> beyond the context of the Sherman Act). The court must accept
> as true all allegations of the complaint and all reasonable factual
> inferences must be viewed in the light most favorable to plaintiff.
> *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944
> (3d Cir.1985). The Court, however, need not accept inferences
> drawn by plaintiff if they are unsupported by the facts as set forth
> in the complaint. See *California Pub. Employee Ret. Sys. v. The
> Chubb Corp.*, 394 F.3d 126, 143 (3d Cir.2004) citing *Morse v.
> Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997). Nor
> must the court accept legal conclusions set forth as factual
> allegations. *Twombly*, 550 U.S. at 556, citing *Papasan v. Allain*,
> 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).
> "Factual allegations must be enough to raise a right to relief above
> the speculative level." *Twombly*, 550 U.S. at 556. Although the

United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." *Smith v. Sullivan*, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 232, quoting *Twombly*, 550 U.S. at 556 n. 3.

*See also Kokinda v. Breiner*, 557 F. Supp. 2d 581, 588 (M.D. Pa. 2008).

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss.  *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.); *Grayson v. Mayview State Hosp.*, 293 F. 3d 103, 110 (3d Cir. 2002); and *Sharpe v. Costello*, 2007 WL 1098964, *3 (M.D. Pa. 2007).  The Court can consider Plaintiff's exhibits submitted with his original Complaint for present screening purposes.  In *Reisinger v. Luzerne County*, 2010 WL 1976821, *7, the Court pointed out:

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Third Circuit Court of Appeals had held that "a court can consider certain narrowly defined types of material without converting the motion to dismiss" to one for summary judgment. *In re Rockefeller Center Properties, Inc. Securities Litigation,* 184 F.3d 280, 287 (3d Cir.1999). Specifically, a court can consider "a document integral to or explicitly relied upon in the complaint ... [and] an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." ( *Id.* (internal citations and quotation omitted).) The Circuit Court explained the rationale for these exceptions: "the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." FN11 *Id.* (internal citations and quotations omitted).) Matters of public record, including government agency records

10

and judicial records, may be considered. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 257 n. 5 (3d Cir.2006) (citation omitted); *Pension Benefit Guarantee Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993).

## V. *Bivens* Standard.

A *Bivens* civil rights action under § 1331 has the same standards as does a § 1983 civil rights action.  In *Naranjo v. Martinez*, 2009 WL 4268598, *6 (M.D. Pa.), the Court stated:

> *Bivens* creates no substantive rights, but rather allows "a citizen suffering a compensable injury to a constitutionally protected interest [to] invoke the general federal-question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). A civil rights claim brought under Bivens is the federal counterpart to an action brought under 42 U.S.C. § 1983, and the same legal principles governing a § 1983 claim apply to a *Bivens* claim.  *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir.2001); *Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir.1975); *Cyrus v. Hogsten*, No. 06-2265, 2007 WL 88745, at *3 (M.D.Pa. Jan.9, 2007). To state a claim under *Bivens,* the plaintiff must show that the defendant, acting under color of Federal law, deprived him of a right secured by the Constitution or laws of the United States. *Brown*, 250 F.3d at 800; *Cyrus*, 2007 WL 88745, at *3.

> Civil rights claims may only be brought against "persons." 42 U.S.C. § 1983. Individual liability in a civil rights action is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir.2005); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir.1997), abrogated in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (citing *Rhode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Further, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009) (collecting cases).

## VI.  Discussion.

11

   *A. Plaintiff's Fifth Amendment Procedural Due Process claims have been dismissed with prejudice by Order of the Court because they are Heck-barred, and, therefore, these claims cannot be reconsidered unless raised in a Petition for Writ of Habeas Corpus under 28 U.S.C. §2241.*

Despite the fact that the Court issued an Order dismissing with prejudice Plaintiff's Fifth Amendment Procedural Due Process claims, Plaintiff in his second Amended Complaint attempted to reassert such claims against the identical seven (7) defendants he asserted them against in his original and first Amended Complaints. (Doc. 21, p. 1).   Plaintiff claims that several of the Defendant Officers filed two separate false Code 205 violation reports against him as retaliation for his exercising his First Amendment rights, and that several other Defendant Officers then used unconstitutional procedures in conducting his disciplinary hearing.   Plaintiff argued that these (alleged) constitutional violations resulted in his conviction, loss of his good-time credits and removal to SHU.  (Doc. 21).

In our Report and Recommendation dated June 13, 2011, we recommended that Plaintiff's Fifth Amendment Procedural Due Process claim be dismissed due to the "favorable termination rule" described in *Heck v. Humphrey*, 512 U.S. 447 (1994).  (Doc. 9).  In relevant part, we stated:

> In *Braggs v. Flatt*, 2009 WL 2750120, *4-*5 (W. D. Pa.), the Court stated:        In *Heck,* the Supreme Court held that a prisoner could not maintain a § 1983 action for damages under the civil rights laws if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence ... unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. The Court has summarized this so-called "favorable termination requirement" by explaining that a "state prisoner's § 1983 action is barred (absent prior invalidation)-**no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings**)-if success in that

action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson,* 544 U.S. 74, 81-82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005). *See also Hill v. McDonough,* 574 U.S. 73 (2006); *Muhammad v. Close,* 540 U.S. 749, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004).

Further, in *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Supreme Court extended *Heck* further by holding that a state prisoner's § 1983 action challenging a prison disciplinary sanction and seeking "money damages, based on allegations of deceit and bias on the part of the decision maker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983" unless the disciplinary sanction has been overturned or invalidated. 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906. (Emphasis added); *Kalomiris v. Monroe County Syndicate*, 2009 WL 73785, *8 (M.D. Pa.); *Arango v. Winstead*, 352 Fed. Appx. 664, 665-666 (3d Cir. 2009); *Taylor v. Scism*, 201 WL 2470806, *3 (M.D. Pa.).

(Doc. 9, p. 14-15).

We explained that because the Plaintiff was challenging disciplinary reports, convictions and sentences, and because none of these reports, convictions or sentences were invalidated or overturned by the DHO or BOP, these claims should not be analyzed because an analyzation would violate the *Heck* favorable termination rule. (Doc. 9, p. 14). Success on such claims would necessarily demonstrate the invalidity of the confinement or its duration in violation of *Heck*. Therefore, we recommended this Court dismiss the Fifth Amendment Procedural Due Process claims because the Court would not be able to analyze these claims in accordance with *Heck* and *Edwards*. Instead, as we explained in our Report and Recommendation, such claims must be raised in a Writ of Habeas Corpus Petition pursuant to 28 U.S.C. §2241. (Doc. 21, p. 15).

The Court agreed with our Report and Recommendation that the Fifth Amendment Procedural Due Process claims relating to Plaintiff's disciplinary convictions and sentences are *Heck*-barred when it dismissed these claims with prejudice in its November 15, 2011 Order, stating:

Magistrate Judge Blewitt recommends the dismissal of Mr. Schreane's Due Process

13

Clause and First Amendment retaliation claims under the favorable termination rule. In *Heck v. Humphrey*, the Supreme Court held that if the success of a §1983 damages suit brought by a prisoner "would necessarily imply the invalidity of his conviction or sentence," the prisoner may only bring the claim where the conviction or sentence has been invalidated.  512 U.S. at 484 (1994).  This holding has been referred to as the "favorable termination rule".  *See Torres v. Fauver*, 292 F.3d 141, 147 (3d Cir. 2002).  The court extended the favorable termination rule to prison disciplinary sanctions in *Edwards v. Balisok*, holding that a prisoner may not bring a §1983 damages suit where its success would "necessarily imply the invalidity of the deprivation of his good-time credits."  620 U.S. 641, 646-48 (1997).  The favorable termination rule has been applied to bar claims under *Bivens* as well as §1983.  *See Lora-Pena v. FBI*, 529 F.3d 503, 506 n.2 (3d Cir. 2008).

Mr. Schreane's due process and First Amendment retaliation claims will be dismissed (with prejudice).  Mr. Schreane is arguing that several of the Defendant Officers filed false charges against him as retaliation for his exercising his First Amendment rights, and then other Defendant Officers used unconstitutional procedures in conducting his disciplinary hearing.  These (alleged) constitutional violations resulted in his conviction and the deprivation of his good-time credits.  If Mr. Schreane succeeded in these claims, it would necessarily imply that both his conviction and the subsequent loss of good-time credits were invalid- and thus the claim violates the rulings of *Heck* and *Edwards*.  The favorable termination rule dictates that the proper avenue of relief for Mr. Schreane is a federal habeas corpus petition to challenge the duration of his sentence.  *See Muhammad v. Close*, 540 U.S. 749, 751 (2004).  Because Mr. Schreane's Due Process Clause and First Amendment *Bivens* claims are barred by the favorable termination rule, they will be dismissed (with prejudice).

(Doc. 18, p. 8-9).

Therefore, the Court has made it clear in its Order dated November 15, 2011, that it dismissed with prejudice Plaintiff Schreane's Fifth Amendment Procedural Due Process claims because of the "favorable termination rule" formulated in *Heck* and applied to prison disciplinary sanctions in *Edwards*.  (*Id.*).  To analyze the merits of these claims would mean the Court would be invalidating the disciplinary conviction and sentence the DHO imposed on Plaintiff, and this would clearly be in violation of the *Heck* favorable termination rule.  To re-emphasize, Plaintiff must seek collateral relief for his alleged Fifth Amendment claims against Defendants in a Federal Writ of

Habeas Corpus Petition pursuant to 28 U.S.C. §2241 as they are barred from a *Bivens* analysis by the *Heck* "favorable termination rule".

> B. *Plaintiff's First Amendment Free Exercise of Religion claims have been dismissed with prejudice by Order of the Court, and, therefore, cannot be reconsidered.*

In his second Amended Complaint (as well as in his original and first Amended Complaints), Plaintiff avers that his First Amendment freedom of religion rights were violated by Defendant Donohue when his religious oils were lost, misplaced or stolen during his confinement in the SHU. (Doc. 21, p. 12  ).  On July 18, 2010, Plaintiff was escorted from his dormitory to the SHU as a result of a misconduct report (*i.e.* the second Code 205 charge) issued against him by Defendant Swartzfager.  During this time, Plaintiff alleges that Defendant Donahue negligently failed to lock up his personal property, pursuant to prison policy. (Doc. 21, p. 12).   As a result, Plaintiff alleges that eight (8) bottles of his religious prayer oils were taken or misplaced from his personal property. (*Id.*). Plaintiff contends that his requests to be reimbursed for the oils were not answered creating a burden on him to freely practice his religion.  (*Id.*).

The First Amendment states, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.  However, prison staff and officials may impose reasonable restrictions on an inmate's free exercise if they are rationally related to a legitimate penological interest.  *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (citing *Turney v. Safley*, 482, U.S. 78, 89 (1987)).

As we explained in our prior Report and Recommendation on June 13, 2011, and as was affirmed by Order of the Court on November 15, 2011, Plaintiff failed to allege that the prison formulated or followed any rule, regulation or policy enforced by the Defendants in violation of the

First Amendment freedom to exercise religion.  (Doc. 18, p. 9-10).

Furthermore, Plaintiff also failed to allege that the bottles of prayer oil were misplaced, lost or stolen intentionally.  Rather, the Plaintiff alleges that Defendant negligently lost when Defendant Donahue packed up Plaintiff's belongings. (Doc. 21, p. 12).  However, mere negligence on the part of an official does not violate the First Amendment. *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) (rejecting an inmate's claim that his free exercise rights were violated by an official negligently failing to approve his requests for religious accommodation).

Furthermore, Plaintiff claims that his First Amendment right to exercise religion freely was violated by Defendant Donahue when he ignored Plaintiff's requests to have the oils returned to him.  (Doc. 21, p.12).  However, lost property claims by inmates can be dealt with in the manner that is outlined through the Bureau of Prison internal procedures.[3]

Simply because the oil was religious in nature and subsequently misplaced or stolen does not create a significant hardship or an impediment to the Plaintiff's free exercise of his religious beliefs.  Regardless of the allegation of negligence on the part of Defendant Donahue by the Plaintiff, the misplacement or theft of religious oils does not amount to a violation of Plaintiff's First Amendment freedom of religion rights.  Plaintiff is still free to carry on his religious exercise. Therefore, in our June 13, 2011 Report and Recommendation, we recommended that the Plaintiff's

---

[3]The BOP has a well established a three (3) step Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment. *See* 28 C.F.R. §§ 542.10-542.19. It has been recognized that a prison's internal grievance system constitutes a meaningful post-deprivation remedy regarding an inmate's loss of property claim. *See Howard v. Bureau of Prisons,* 2008 WL 318387 *17 (M.D.Pa. Feb.4, 2008); *Durham v. Dep't. of Corrections,* 173 Fed. Appx. 154, 157 (3d Cir.2006).

First Amendment freedom of religion claim against Defendant Donohue be dismissed.  (Doc. 9, p. 20-23).

In the Court's November 15, 2011 Order, the Court adopted our recommendation regarding Plaintiff's First Amendment Freedom to Exercise Religion claim when it stated:

> Here, (Plaintiff) Mr. Schreane claims that Defendant Officer Donahue violated his First Amendment claims by negligently failing on one occasion to secure his religious oils, which were then stolen, limiting Mr. Schreane's practice of his religion.  He does not allege that any rule, regulation or policy caused the violation, nor does he allege that Officer Donahue made an intentional decision not to lock up the oils.  Because Mr. Schreane has only alleged that Officer Donahue made a negligent mistake in managing inmate property, his free exercise claim will be dismissed (with prejudice).

(Doc. 18, p. 9-10).

> C. *Plaintiff's Eighth Amendment Cruel and Unusual Punishment claims have been dismissed with prejudice by Order of the Court, and, therefore, cannot be reconsidered.*

In his second Amended Complaint (as well as in his original and first Amended Complaints), Plaintiff claims that his Eighth Amendment protection against Cruel and Unusual Punishment was violated when he was moved to the SHU and lost good-conduct time as a result of his two violations of Code 205.  (Doc. 21).  The Eighth Amendment prohibits infliction of cruel and unusual punishment.   U.S. Const. amend. VIII.   Typically, prisoner Eighth Amendment claims involve inhumane prison conditions or use of excessive force by prison officials.  *See, e.g., Whitley v. Albers*, 475 U.S. 312 (1986); *see, e.g., Helling v. McKinney*, 509 U.S. 25 (1993).  An inmate must first prove that "the prison official's act or omission resulted in the denial of 'the minimal civilized measure of life's necessities,'" meaning that the inmate must prove he suffered a sufficiently serious deprivation. For example, a sufficiently serious deprivation occurred when a prison failed to provide

disabled inmates with accessible showers. *Muhammad v. Dep't of Corrections*, 645 F. Supp. 2d 299, 317 (D.N.J. 2008). Another example of a sufficiently serious deprivation occurred when an inmate was restrained in an awkward position for twelve hours in a cold room without necessities such as food, drink, blankets, or the use of a bathroom or shower. *Caldwell v. Luzerne Cnty. Corrections Facility Mgmt.*, 732 F. Supp. 2d 458, 471 (M.D. Pa. 2010). Secondly, an inmate must prove that the prison official acted with "deliberate indifference" to inmate safety and health. *Id*.

As stated above, Plaintiff did not prove the two necessary elements to raise a successful Eighth Amendment Cruel and Unusual Punishment claim. Plaintiff alleged only that he was moved to the SHU and lost good-conduct time due to the two Code 205 violations. (Doc. 21). This does not rise to the level of a sufficiently serious deprivation as seen in *Muhammad* and *Caldwell*. Plaintiff suffered no pain or interference with his basic human needs or health.

Because Plaintiff did not meet the elements of an Eighth Amendment claim, the Court dismissed Plaintiff's Eight Amendment claim with prejudice in its November 15, 2011 Order, and, therefore, this claim cannot be reconsidered. (Doc. 18, p. 12).

> *D. We recommend that Plaintiff's Fifth Amendment equal protection claim be dismissed with prejudice because Plaintiff, in his second Amended Complaint (as well as in his original and first Amended Complaints), provides no evidence of discrimination.*

Throughout his second Amended Complaint (as well as in his original and first Amended Complaints), Plaintiff generally alleges that Defendants have violated his equal protection rights under the Fifth Amendment claiming that he was accused and convicted of two separate Code 205 violations and sentenced to SHU and loss of good-conduct time based on the fact that he is African American. (Doc. 21). Equal Protection claims involving the federal government fall under the Fifth

Amendment because the Fourteenth Amendment Equal Protection Clause applies only to state actors.  Regardless, the equal protection analysis remains the same for both federal and state equal protection claims.[4]  The Equal Protection Clause guarantees all citizens "equal protection of the laws," meaning that similarly situated people must be treated the same.  U.S. Const. amend. XIV. In order to successfully raise an equal protection claim, a plaintiff "must present evidence that s/he has been treated differently from persons who are similarly situated."  *Williams v. Morton*, 343 F. 3d 212, 221 (3d Cir. 2003).  However, if an infringement on a prisoner's equal protection rights is reasonably related to a legitimate penological interest, the prison regulation will be upheld. *DeHart v. Horn*, 227 F. 3d 47, 61 (3d Cir. 2000).

Plaintiff was afforded a third opportunity (via his second Amended Complaint) to prove his equal protection rights were violated by Defendants by providing this Court with evidence that he was treated differently than similarly situated inmates.  However, Plaintiff presented neither direct nor circumstantial evidence that he was treated differently than similarly situated inmates.  Plaintiff only states that he was discriminated against based on his race, but does not support this allegation with any evidence whatsoever that he was treated differently than similarly situated inmates. Plaintiff has had ample opportunities to support his claim with evidence that he was treated

---

[4]  The Court of Appeals has recognized: "Although the Fifth Amendment contains no Equal Protection Clause, the Fifth Amendment Due Process Clause prohibits the Federal Government from engaging in discrimination that is so unjustifiable as to be violative of due process . . . . . Accordingly, the Court has construed the Fifth Amendment to contain an equal protection guarantee." *Abdul-Akbar v. McKelyie*, 239 F. 3d 307, 316 (3d Cir. 2001) (en banc opinion) (internal citations and quotations omitted). Equal protection claims asserted under the Fifth Amendment are examined under the same principles that apply to such claims under the Fourteenth Amendment. *Id.* at 17.

differently than similarly situated inmates, but has failed to do so.  Therefore, we recommend that Plaintiff's equal protection claims be dismissed with prejudice because he has failed to state a cognizable claim.

## VII. Recommendation.

Based on the foregoing, it is respectfully recommended that the action be dismissed with prejudice.  Plaintiff's First Amendment Freedom to Exercise Religion, Fifth Amendment Procedural Due Process, and Eighth Amendment Protection against Cruel and Unusual Punishment claims have already been addressed and dismissed with prejudice by Order of this Court on November 15, 2011.  (Doc. 18).  We recommend that Plaintiff's Fifth Amendment equal protection claim be dismissed with prejudice because Plaintiff had a third opportunity in his second Amended Complaint to meet the elements necessary to prove this claim, but has failed to do so, and, therefore, has failed to state a cognizable claim.

Thus, it is recommended that Plaintiff's Amended Complaint **(Doc. 21)** be dismissed in its entirety as against all seven (7) Defendants.

Further, it is recommended that since Plaintiff has already filed two Amended Complaints, he not be granted leave to filed a third Amended Complaint based on futility.[5]

 

 

 

          **s/ Thomas M. Blewitt**
          **THOMAS M. BLEWITT**
          **United States Magistrate Judge**

**Dated: April 13, 2012**

---

[5]Pursuant to our above discussion, we find futility of any further amendment of Plaintiff's claims against all seven Defendants, and we shall not recommend Plaintiff be granted leave to file a second amended pleading with respect to his claims.  *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004); *Conway v. King Pharmaceuticals, Inc.*, 2008 WL 4128088, *2 (M.D. Pa.).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARENCE D. SCHREANE, | : | CIVIL ACTION NO. 3:CV-11-0613 |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| RONNIE HOLT, WARDEN, et al, | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **April 13, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.
> Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed

before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


_____     **s/ Thomas M. Blewitt**
                                **THOMAS M. BLEWITT**
                                **United States Magistrate Judge**

**Dated: April 13, 2012**